May it please the Court, I am Anne Hayes. I represent the appellant Enil Velasquez on this appeal. I plan this morning to focus chiefly on the challenge to the District Court's denial of the motion to dismiss the case on speedy trial grounds, and I also intend, if time permits, to address the issue of the appeal. I will address the argument regarding supervised release conditions as to the additional argument regarding sentencing. I wish to rest on my brief. Mr. Velasquez entered a not-guilty plea to two counts on July 22, 2019. Assuming that no speedy trial days had elapsed prior to that time, countable time, the Court had 70 days to bring the case to trial under the non-excludable days. So assuming that no excludable days occurred, the case should have been brought to trial, should have begun by September 30, 2019. But a scheduling order didn't issue until after that time had expired. The scheduling order was issued on November 7, 2019 and set the trial for months later on February 25, 2020. So the speedy trial clock ran uninterrupted from the July 22 date until February 5, 2020, when defense counsel filed a motion to withdraw from the case due to a conflict. Against this backdrop, the defendant personally filed a demand for speedy trial with the Court and then his attorney filed a motion to dismiss the indictment based on speedy trial grounds. The District Court erred in three regards when it denied the motion to dismiss based on its characterization, its reliance on the statutory provision regarding ends of justice continuances. First of all, I want to note that the language concerning ends of justice continuances is an uneven fit in this case because there was no continuance. At the time these events started, there was no trial date. There was nothing to continue. So there was a delay, but it technically was not a continuance of an existing trial date. Because the last time the judge set a trial date was immediately after the indictment. After that time, several times the arraignment was continued, but there was never another trial date set until the case was very old. And seven months after the not guilty plea, six and a half months after the not guilty pleas, to accounts one and four of the indictment. There were three flaws in the judge's reasoning in this case. First, the statutory requirement for contemporaneous findings was not met. Second, there was no record support for a contemporaneous finding that the delays that the judge approved were warranted to provide counsel time for trial preparation. And third, the open-ended nature of the delay was unreasonable. Counsel, how much are you relying on the open-ended nature of the delay? Would it make a difference if the district court had said in that minute order, in 180 days we'll have trial? No, Your Honor, because there was no basis. The other two flaws in themselves render the judge's ruling erroneous. So your argument about open-ended delays is one we really don't have to reach? You don't have to. You would like us to. I would like you to, but it certainly factors into the reasonableness or the inaccuracy regarding the other flaws. You're saying we don't have to decide whether an open-ended continuance is ever okay, but you think we should look at the open-ended nature of it? It is sort of a factor to consider. Yes, Your Honor. Has any court said that? I'm sorry, Your Honor? Has any court said that you, because most of the circuits, as I understand it, don't take a position that open-ended continuances per se are invalid under the statute. What I'm asking is, do any of those circuits say, well, nonetheless, we're going to continue with it, we're going to look at it as a factor in the delay? I mean, if you've got a delay that exceeds the time period, what difference does it make? The cases that address, and I hope I answered your question accurately. The cases that direct whether an open-ended delay continues can be granted really talk specifically about that. Because in those cases where they've talked about open-ended delays, continuances, and approved them, there has been a reason stated for the delay. There's been a reasonableness requirement imposed. So that ended up being the primary problem in those cases was the open-ended nature of the delay, rather than whether the judge made findings or whether those findings were supported, Your Honor. So why don't we look at the time period here, say starting with the July 22nd minute order, and tell us why in any given time period the trial court failed to comply with the statute. Certainly, Your Honor. If you do that, then the open-ended continuance part is really not relevant. That's correct, Your Honor. So let me get started. On July 22nd at the hearing, the judge simply at the end of the arraignment process said, do you all want to talk about trial dates? They said, well, we'll get back to you on that, Your Honor. Is that all right? Yes, that's all right. Nobody acknowledged that there might be any delay that would impact the speedy trial. Nobody mentioned speedy trial. Then in the minute order, which incidentally, a minute entry should reflect what happens in open court in the courtroom, because nobody mentioned speedy trial computations, any exclusion. That minute order should be a nullity. Plus there's the fact that as a practical matter, minute entries generally are made by clerks, not the court. It's really hard to know where that, what the genesis was for that, and whether it may be just that clerks are told. If there's a delay, you always need to put on that docket sheet that it's excluded from the Speedy Trial Act. So I'm not sure that, I don't think that minute entry gets us anywhere. So, I mean, are you arguing that the minute entries are simply invalid evidence? I don't think any courts ever said that in this context, have they? I am not familiar with courts that rely simply on minute entries to find, to determine speedy trial findings, Your Honor. And I'm not aware of any provision that allows, except in those cases where the docket sheet specifically says this is an order on the docket sheet. If it's a minute entry that reflects what happens in court, it should reflect what happens in court. And that's not what happened in this case. Moving on to the findings at the November 7 order. The judge said, the court finds that the ends of justice served by granting this extension outweigh the best interests of the public and the defendant in speedy trial. It doesn't identify what dates it might be talking about, how many days are excluded. It's not talking about a continuance. But most importantly, it does not explain what the justification is for the continuance or for any balancing act. And the statute, by its terms, require not only that the judge say that the continuance outweighs the best interest, the ends of justice outweigh the interests in a speedy trial, but it also must set out its reasons for finding that the ends of justice served outweigh the interests of the public. I lost track for a second. Yes. To clarify, we're talking now about the order that issued on November 7? That's correct, Your Honor. Okay, but I have a question. If we think hypothetically, if hypothetically it were the case that we couldn't be confident that there was a contemporaneous end of justice finding back on July 22, it wouldn't really matter whether the November 5 order was sufficient or not, right? Because the first 188 days by themselves? That's absolutely correct, Your Honor. So it just accumulates. But you're right. If we don't have an adequate finding on July 22, and we don't. Okay, because it seems to me you're raising sort of two very different arguments. One is there was nothing on July 22. And then you have a different argument about November 7 about kind of generic ends of justice findings. There was a finding, but it was kind of generic. But it wasn't good enough. But we don't have to reach that question if hypothetically we agreed on the first question. That's correct, Your Honor. And I'm going to jump now to the order on May 20, the oral order that the judge made. Now that you're there and to follow Judge Harris's question, let's say everything is as it is until you get to May 20. And at the motion to dismiss hearing, the district judge says what he says in the record. On July 22, I excluded the time under the Speedy Trial Act for trial preparation. And then instead of what we have here in the record, the U.S. attorney says, Your Honor, that's correct. We had this colloquy. It wasn't in the record. And we all agreed we couldn't be ready on time and we needed this time. And defense counsel stands up and says, Yeah, that's right, Your Honor. We didn't enter it in the record at that time, but we had that discussion at the bench and it just must not have made it into the record. So we agreed that we needed this extra time for trial preparation. And so that's entered here in the motion to dismiss hearing, and the judge rules on it before he enters the order on the motion to dismiss. Is that sufficient? No, Your Honor. I'm sorry, Your Honor. I thought it was sufficient as long as the judge got it on the record before and there was something in the record by the time he ruled on the motion to dismiss. I thought that was the case law. The case law says that... You can certainly argue that didn't happen in this case. That didn't happen in this case. And that's why I'm standing in some sort of confusion. I have very limited time, so what I want to tell you is why the finding, the court does not reflect a contemporaneous finding in July that there was a need for additional time. My question goes to that because it takes off where Judge Harris left off, which is even though the July 22nd and the November orders may have been insufficient, if the record is made sufficient by the time the district court judge rules on the motion to dismiss, my understanding is under the Speedy Trial Act, that's good enough. Zedner says if the record reflects that there was a finding, at least in the judge's mind, even if it wasn't expressed out loud, that was contemporaneous, that's sufficient. And I believe that's what you're getting to, Judge Ager. But your argument here is that didn't happen. It didn't happen, and I'll just do a double-barreled explanation about why those findings weren't adequate and why there was no record support for a finding on the 7th of July that the council needed more time. The judge only asked about, do you have a trial date for me? No, I don't have a trial date for you. We'll get back to you. Nobody said, Judge, even though 11 months has passed already to this time, we're not ready for trial. Nobody said, even though we have 70 more days before the Speedy Trial Act period ends, we're going to need more time than that. Nobody said that, and there's no reason to believe that's true. It's not a complex case. The emails that ensued after that point between the case manager and the attorneys referred only to trial dates. When are you available? I'm available on these days. Nobody said, you know, I just need more time to look at discovery. I need more time to find witnesses. There was no reference to trial preparation. It was all, these are when I have trials and when do you have trials, and let's make sure our schedules match and it's convenient. And so the only reason that can be gleaned from the record for that delay is the convenience of counsel and the judges in slouting the trial around their other trial commitments, and it's not a basis that works. The United States v. Henry establishes that the convenience of the parties, of the attorneys, is not enough. They said at the- Counsel, I don't even see how that question is presented here. If the court in denying the motion to dismiss had said, I made an ends of justice finding based on the convenience of the parties, then we could have that debate, but the judge didn't even say that. The judge said it's because defense counsel in particular needed time to prepare. And so if there's no basis for that in the record, aren't we kind of done here? Absolutely, Your Honor. The only reason I'm talking about that is to establish that he didn't, nobody did say that it was for trial preparation. So absolutely, Your Honor. So on those bases, the judge erred in denying the motion to dismiss.  I probably shouldn't ask you to speculate. And if you're not comfortable speculating, and if this is an inappropriate question, I withdraw it. But I am actually trying to figure out what on earth happened here. And it did occur to me, the, before the arraignment, there were those delays, and those were because defense counsel needed time to prepare. Yes, Your Honor. So I just wonder if maybe, you know, wires got crossed a little bit. You know, and I just want to say, until we get to July 7th, everything is on track. A formal motion is filed, a formal order is entered, a formal motion, and so on. We get to 7, everything falls off the rails. Nothing is done that's contemplated. And I think it's because there's not a trial date. Nothing's being continued. They're just saying, what are we going to do? And I had another place I was going with that, but I've just lost that train of thought. So, oh, I know what I wanted to mention. If I might just take 10 seconds to mention that in the findings that the judge made at the May 20 hearing, he referred to having granted an extension for defense counsel to have time to prepare, specifically said defense counsel. And I'm wondering, just as a matter of speculation, whether he was thinking about the later continuance where new counsel had to come in because the original attorney had withdrawn. And at that point, of course, he had to give a continuance for the new attorney to prepare for trial. With that, I will address you on rebuttal. Thank you very much. Good morning, Your Honors. Good morning. May it please the Court. Connor Winn for the United States. The United States, similarly, will be addressing today the Speedy Trial Act issue, and to the extent that the Court has any questions, Mr. Velasquez's arguments concerning his conditions of supervised release. Starting with the Speedy Trial Act, as this Court was just discussing with opposing counsel, the District Court's ruling on Mr. Velasquez's motion to dismiss comes down to two continuances, one which was granted on July 22, 2019, and another which was granted on November 7, 2019. And the bottom line question is whether these continuances were procedurally appropriate under the Speedy Trial Act and whether they were substantively appropriate under the Speedy Trial Act's ends of justice exception. And there's also a question of whether Mr. Velasquez should be stopped from raising any challenges to either of those continuances. Before you begin your argument, which I do want to hear, I had understood that when the United States opposes a Speedy Trial Act motion, that there had to be approval by what my husband used to call Maine Justice. Is that still the case? Your Honor, I'm not aware that there has to be approval for Maine Justice to oppose a Speedy Trial Act motion. In fact, there was no government response to the motion in this case, and the government was never provided with an opportunity to argue against the motion. Judge Deva ruled on it without responses from the government. But you're arguing against it right now. That's what I'm asking you. Did you have to get some sort of approval from Maine Justice to do that? No, Your Honor, and to the extent that we would, I work with the criminal appellate section. I am Maine Justice in a sense. I noticed that. Yes, Your Honor. That would have been if you said, oh, yes, indeed, and I got this approval, and that's why I'm here. But no. Okay. Thank you. Certainly. So taking each of those continuances one at a time. I'll start with the July 22, 2019 continuance. But actually to fully understand the scope of what was happening at that arraignment, it's important to take a step back and examine the lifespan of the case up until that point in time. After Mr. Velazquez was indicted on the superseding indictment in this case, there were a number of continuances moved forward by defense counsel. And they were granted. And they were for a variety of different reasons. They were to discuss potential plea negotiations, to examine discovery, to deal with electronic discovery issues that were pervasive in this case. But none of those are at issue here, right? No, they're not. But I think it's important to understand, and particularly there was another two continuances granted for defense counsel's medical issues immediately before the July 22nd arraignment. And those defense counsel's medical issues actually interfered with her ability to consult with her client about this case. And she was on medical leave in June 2019, fully not working, right? She's on medical leave. She's not engaged in her job as a public defender. And it's with this context in mind that the parties meet before the July 22nd, 2019 arraignment. And we know, based on the government's representations at that arraignment, that the parties discussed in their pre-arraignment conference that the, quote, earliest date they could be ready for trial was December 2019. That's what the prosecutor reported to the district court during that arraignment. And that helps to explain why trial preparation was necessary the course of proceedings up to this point. I'm sorry. So at the hearing, they said we can't be ready until December. It was clear that it wasn't just that there were other scheduling conflicts or something else going on. They said we need that much time to prepare. The specific language that I believe was used, Your Honor, is the earliest we can probably be ready is December. And it's looking like probably. I thought the judge said that. No, Your Honor. That was the government representing the joint position of the parties. You can see that in the record here on page JA96 and 97. It's looking like probably December is the earliest. That's correct. That doesn't say that's because we need that time to prepare for trial. Oh, no. To be clear, Your Honor, that wasn't a specific representation. No one did mention trial preparation. No, the trial preparation is clear from two points. It's from context. First, there has been no continuance up until this point for trial preparation. Everything has concerned issues with discovery or potentially defense counsel's medical leave or plea negotiations. And the second point that kind of bolsters the defense need for trial preparation is that defense counsel has been out on that medical leave for such a significant amount of time at this point. That all sounds plausible now, but where do we find that in the record? Well, Your Honor, that's in the records in the motions for continuance that defense counsel filed. We're looking at the time after July 22nd. Certainly, Your Honor. What we need is some evidentiary basis that backs up what the district court said either in the later order or at the motion to dismiss. So if what you just relayed was in the record somewhere, that makes a difference. But if it's not in the record, I don't know that that's something that's really relevant. So, Your Honor, with regards to the medical leave requests, I would direct the court's attention to pages JA-61 and JA- But is there something in the record that says defense counsel said she needed this much time for trial preparation? No, there's no specific statement by defense counsel to that effect. But, Your Honor, it's clear from this court's case law that there doesn't necessarily have to be such an explicit statement. The district court is aware of the context of a case and its lifespan. So if it's apparent from the record and from sort of the events that have come before that such trial preparation is necessary, the district court can make an ends of justice finding on its own based on the needs- How is it apparent on this record, after July 22nd, that there needed to be a continuance? After July 22nd or leading up to that point in time, Your Honor? After. That's what we're looking at. That's the gap period. What tells us after that date that there was a need for the continuance? It's the government's position that it would be the statement from the government at the arraignment saying that the earliest date for the parties is in December of 2019. Maybe the government lawyer was playing a golf tournament or who knows what the reason is. That's not in the record. Certainly, Your Honor. And to be clear, the government's not saying that there's any sort of explicit statement from the government or from defense counsel saying at that arraignment the words trial preparation. What there is, however, is there is from the district court at that hearing a statement to Mr. Velasquez indicating that he will continue to have access to his counsel as he, quote, prepares for trial. So even if the parties didn't make the specific- Is that true in any case? Well, yes, Your Honor. It's certainly true that a defendant will have access to the counsel as they prepare for trial. But what that quote shows is that trial preparation on behalf of the defense is on the district court's mind. So even if the parties don't make a specific request for trial preparation, a district judge can sui sponte grant an ends of justice continuance on that ground if it believes it's appropriate to ensure a fair and just trial for Mr. Velasquez. And it's the government's position, based on the recent medical leave of his counsel, that that would in fact be necessary. To the extent, Your Honor, that this court believes that one of the attorneys specifically needed to say trial preparation was some sort of explicit statement from the attorneys that that was necessary, that that might defeat the ends of justice continuance's substantiveness. That would render it at least procedurally invalid. But we think that this court could nevertheless affirm the non-inclusion of that time on the speedy trial clock under this court's anti-sandbagging principles under United States v. Keith and the way that it has continued to apply those principles in recent years. Essentially, that establishes that if there were grounds that would have justified an ends of justice continuance and Mr. Velasquez's counsel consented to the continuance that ended up occurring, he's not allowed to assert either before the district court on appeal that those days should have been included in the speedy trial clock. So I read Zedner as setting out a slightly different standard than what we said in Keith. I thought Zedner said, you know, basically defense counsel can't waive this, so we cannot say you're stopped because you consented. We need something much more than consent. And it actually has to be the defense counsel basically persuaded the district court that the ends of justice exception was met. That's what would have stopped you. And I'll see how we can find that here when the defense counsel didn't even say anything at the hearing. So two points on that, Your Honor. First, I do acknowledge that Zedner came after United States v. Keith, but this court has, at least in its unpublished opinions, which the government recognizes are not binding, continued to apply United States v. Keith's anti-sandbagging principle. I think the district court has a different view. Maybe we were in error. Or maybe it didn't make a difference in those cases. But if there were space between Keith and Zedner, I'm not sure there is, but if there were and or implicated in this case, like obviously we have to follow Zedner. Certainly. If this court thought Zedner had somehow abrogated Keith on those grounds, then Zedner would control. There's no question there. I think you can meet the Zedner standard here. Is it possible to say that defense counsel in this case persuaded the district court that the ends of justice exception was met? I do think that it is. I think that the representations that happened at the July 22, 2019 hearing The defense counsel literally didn't say anything. Well, almost correct, Your Honor. I would amend that statement with one clarification. The district court asked defense counsel if she had anything to add to the government's representations, and she did say no, nothing else. So in that sense, you know, if defense counsel had an objection to the truthfulness or accuracy of what the government had said, she would have been obligated as an ethical matter to respond, and she had nothing to say. So essentially, the government would say that she joined the government's representations on to their conversations leading up to that time. I think we could say, or one could say on this record, the government persuaded the district court the ends of justice exception is met here because the government said it looks like December is the earliest. I think the way that I would characterize it is that the government represented the joint position of the parties based on their pre-arraignment conference and was reporting that position to the district court. The government gave that position. The defense had no corrections or amendments to the position, and that's what the district court was operating off of. But is any part of the government's, I'm assuming now, yes, the defense and the government jointly offered this representation that looks like December is the earliest. I am having trouble figuring out how that is an argument to the district court that the ends of justice exception is met here. It sounds to me like they're just saying we're busy until December. Your Honor, I don't have anything to add on that point beyond kind of what I have said as to the context and justifications for the substantive validity of that continuance at this point. If the court has any questions about the November 7, 2019 continuance, I'm happy to address those. I think the arguments in many respects echo this, but the main difference is that there is a series of e-mails between the parties and the district court's court clerk communicating principally trying to set a trial date. I think this, unlike the July 22 continuance, implicates government's continuity of counsel, which is a valid substantive reason for an ends of justice continuance. Specifically, the government is discussing its criminal trial schedule, and it's important to realize that there was only one government prosecutor on the case at the time. So to the extent there are other criminal trials that have to be attended to, that impacts the government's ability to participate, obviously, in this criminal trial. That's all the government has to address specifically on the Speedy Trial Act issue. With one final caveat, obviously, the district court did put its findings into the record at the May 20 ruling on the motion to dismiss. That's enough to satisfy the procedural constraints that Zedner imposes, we would suggest, with regards to ends of justice findings. So we think the real question here, as we've been discussing, is whether the continuances were substantively justified and whether Keith's anti-sandbagging principle should have stopped. Mr. Velasquez? As I read it, all the district court said at the May 20th was, I excluded the time under the Speedy Trial Act for trial preparation, period. There's nothing else that says, because that's what the parties told me, or go back in the record and you can see it at such and such a place. I mean, that's just a statement. And there has to be, wouldn't you agree, there has to be something in the record that verifies that that's accurate? So, Judge Adjei, we think that's sufficient to satisfy. I want to distinguish here between the procedural and the substantive requirements of the Speedy Trial Act. We think that's enough to satisfy the procedural requirements with regards to an ends of justice exception. It explained the district court's reasoning for its ends of justice finding. What your question is getting at is whether there was a substantive basis in the record supporting that finding. And on that, it's to what the government has already said. I don't think that the district court's ruling provides greater insight into the substantive reasons for the ruling. Maybe this is just semantics, but I'm just a little bit confused. I thought part of the procedural requirement of the Speedy Trial Act is that there be a contemporaneous ends of justice finding at the time the continuance is granted. And so maybe we're talking about the same thing. Like, I agree with, I do believe that the district court, this goes back to Judge Adjei's question, the finding has to be made at the time the continuance is granted. It has to be put on the record by the time the motion to dismiss is ruled on. So the district court got something on the record on time. That procedural requirement was met, but don't we still have the procedural question of whether was there a contemporaneous finding made at that arraignment? Or are you calling that substantive? I think I would call that substantive, Your Honor. There has to be a contemporaneous balancing based on permissible ends of justice factors, and that's what I would describe as the substantive requirements of that exception. The procedural requirement is just, is it actually articulated at some point in the record what the district court believes it did? Is Mr. Velasquez in jail now? Yes, Your Honor, he is. He is serving a 264-month sentence at this point in time. And if we should conclude that there has been a denial of the Speedy Trial Act, what would happen then? So the remedy in this case, Your Honor, it's a little bit complicated because Mr. Velasquez pled to three counts, Council 1, 3, and 4 at the arraignment. Because he pled guilty to those counts, those convictions will remain intact even if he prevails on the speedy trial issue here. So if he prevails on the speedy trial issue, the appropriate remedy for this court would be to vacate the two convictions he went to trial on, which would be Counts 2 and 5, and then remand to the district court to determine in the first instance whether it should dismiss those counts with prejudice or without prejudice and allow the government to retry him on those two counts alone. Does this have any real-world consequences when you look at the sentencing guidelines? The sentencing guidelines? Potentially. The methamphetamine charges that he faced were, you know, those drug quantities are more significant. So if he gets a resentencing in any of that, right? That's correct. So to be clear, in vacating Counts 2 and 5, this court would also need to vacate his sentence on all five counts under the Sentencing Packaging Doctrine. And then the government, if the charges are dismissed with prejudice, then sentencing would proceed on the three cocaine-related counts that remain. If it's dismissed without prejudice, the government will have the opportunity to reindict and retry if it wishes. I do think at sentencing on the cocaine counts, it seems likely that the methamphetamine conduct might come in as relevant conduct potentially and, you know, query how that's going to affect the sentencing on resentencing if there is one. But that would be—so yes, the appropriate remedy would be to vacate the convictions on Counts 2 and 5. I think that hashes the Speedy Trial Act issue pretty well. If the court has any questions on the conditions of supervised release, the government would be happy to talk about it. One thing it would note is we submitted a Rule 28J letter regarding this court's decision in the United States v. Elbaz. The government is aware that there has been a request for a response to the petition for a hearing on Bonk in that case, and the government filed that response yesterday. The government doesn't believe that the standard of review that applies to the three supervised release claims here is dispositive. We think it's possible and that this court should affirm on the supervised release issues no matter the standard of review. But if this court disagrees, it may be necessary to hold the case for Elbaz depending on how it thinks the standard of review would interact with those three claims. As to the merits of each of those claims, I'll tick through them fairly quickly. First, there's the question of whether the conditions of supervised release listed in the written judgment sufficiently match the conditions of release pronounced at the oral sentence. Here, this case is a little bit different from United States v. Rogers because the district court specifically said that it was imposing, quote, standard conditions, as Mr. Velazquez acknowledges in both of his briefs. Instead, his claim here is whether or not the district court clearly incorporated certain conditions of release contained in the Eastern District of North Carolina standing order. So that's a slightly different type of claim. Elbaz suggests that that would be reviewed for plain air. Either way, when there is ambiguity into exactly what sort of standard conditions have been imposed, United States v. Rogers teaches that we can look to the written judgment to clear up that ambiguity here. It obviously would be better, right, for the district court to take the time to say the five extra words of standard conditions in the district order forwards. I mean, it must have... Elbaz itself says if you just say standard conditions, the natural inference is the guidelines. Your Honor, more clarity is never a bad thing from the government's point of view, but we think that whatever ambiguity did linger in that phrase, standard conditions can be clarified by the written judgment, as this court indicated in Rogers. The judicial delegation and procedural... The procedural reasonableness claim as to the explanation, you know, 14 of the conditions here were appropriate according to the sentencing guidelines themselves. The first 13 conditions are recommended in every criminal case. The 14th, when there's an order of forfeiture, that leaves the 15th condition. And whether or not there's a procedurally valid reason, self-evident from the record here, to limit Mr. Velazquez's access to lines of credit or to incurring future credit charges. The government would submit there was, in this particular case on the record, because of Mr. Velazquez's drug-dealing activity. But, so, I don't want to take you too far over your time, but... The government's position is that it's self-evident that he can't use a credit card because he made money from his crimes? Well, it's the lines of credit specifically. And it's not the government's position that anytime a defendant makes money or anytime there's a case involving drug-dealing, such a condition is necessarily going to be appropriate. But here there's record evidence explaining how Mr. Velazquez was something more than an average drug dealer. Specifically, there was a premises enhancement applied because he owned multiple residences which he used for his drug-dealing. There's also evidence in the record that he regularly changed vehicles, buying and selling cars. These are the sort of activities that require lines of credit, and it's clear that both the vehicles and the residences were being used to facilitate a pretty significant drug trafficking. I'm not saying it couldn't be justified in this case, but self-evident seems like a lot. But you think it was... We can infer from this record, obviously the district court was thinking he has a lot of houses, so... I think that's particularly plausible here because the district court found the premises enhancement valid, and it was clear during the district court's colloquy on that point. It wasn't clear if Mr. Velazquez owned or rented the home, but it was one of several homes. You can see the district court's discussion on this at JA 680-684. And then if you want some of the trial testimony relating to the multiple residences he owned, that's at 442-443. If the panel has no further questions, the government is happy to rest at this point. Thank you. Thank you, Your Honors. Ms. Hayes, I think you have a little bit of rebuttal. Excuse me, ma'am? I think you have a little bit of rebuttal. A little bit. First, I want to say the history regarding the ends of justice delay. The history of a prior continuance has absolutely no bearing on whether the parties needed additional preparation time as of July 22. The defense attorney needed 30 more days to prepare for the arraignment, which in the Eastern District of North Carolina anticipates trial as well. They are closely paired in the Eastern District. She said she needed 30 days. The court gave her 30 days. That was resolved. She never suggested that she needed another minute for trial preparation that wasn't available to her. She certainly never suggested that she needed more than 70 days that remained on the speedy trial clock to be ready for that trial to commence. So that history has no bearing on the delays that are at issue in this case. I did want to mention on the remedy in terms of resentencing, it's significant that it's counts one and four that went to trial in this case. They related to methamphetamine. That has a long, the maximum sentence is very long for that. The counts to which Mr. Velasquez pleaded guilty, the maximum statutory sentence is 20 years. He got 264 months. That's two years beyond what a cocaine conviction would warrant. Of course, they could be run consecutively, but it's very unlikely and unusual that sentences on drug counts are run consecutively. Back to the need for trial preparation. There are both procedural and substantive problems with relying on the need for trial preparation. As Your Honor noted, there has to be a contemporaneous finding, and there simply is no hint in the record. And that's a procedural requirement. It's a strict requirement. The court's, Zedner and this court's opinions are clear. There are strict requirements on ends of justice requirements on the procedural grounds. Zedner specifies there has to be strict procedural requirements because the bases can be so flexible. And so one counteracts the other. The procedural requirements counteract the flexibility and the substantive bases that might be presented. So the court has to be strict about the procedural requirements. And also, as has been discussed, their record just provides no basis for finding that anybody asked for time for trial preparation. Continuity of counsel has been suggested by counsel here as a reason why a continuance was needed or a delay. I'm sorry, it's not a continuance. Why a delay was needed. The court did not make any finding. The court never said the words continuity of counsel. That is not a basis for the court's findings. And I would submit that it's not a basis that can be gleaned from the record in any event. If he had made the finding, it wouldn't be supported. Also, counsel suggests that the court could look at the parties and say, you know, I think you're going to need more time. So even if you don't ask for it, I'm going to give it to you. The Speedy Trial Act does not provide for giving gifts of continuances. The Speedy Trial Act requires that the parties establish that they need time. Not that it would be nice if the judge would provide that gift because he's a sensitive, caring individual. A stopple. Of course the defense attorney did not persuade the judge to give a delay. There is no indication in the record that on July 22 anyone was thinking about delays, Speedy Trial Act, the fact that they were asking for something unusual. What do you think, counsel? Oh, well, and the court has quoted. It's so clear. And, well, I'm not going to have a chance to address my... Actually, I want to see if we're reading Zender the same way. As I read Zender, it wouldn't be enough to stop a defendant from raising his speedy trial, I claim, even if his lawyer had persuaded the judge to give an extension. It's that the lawyer would have had to persuade the judge that an extension was warranted under the Speedy Trial Act. That there was... As I read Zender, you'd actually have to say something like, look, continuity of counsel is at issue here. And then turn around and say, actually, there's no continuity of counsel issue. Absolutely, Your Honor. And, in fact, even Keith requires that. And I will just say very briefly with respect to the stopple issue, Zender says no prospective waivers of speedy trial rights. This is a functional equivalent in this case, where there's an unguided, untethered-to-anything agreement of unknown duration. That's a waiver that's precluded by Zender. And, finally, I'll just say with respect to the supervisory, please read my response to the Rule 28J letter. Because the standard is de novo review. The issue was whether there's conformity between the pronouncement and the judgment. And there wasn't. So Zender does not apply to the conformity argument. That being the case, I would ask the court to vacate the judgment, remand to the district court with instructions to dismiss the indictment on speedy trial grounds, and alternatively to vacate the sentence based on the nonconformity of the judgment to the announced pronounced sentence. Thank you, Your Honors. We will go directly to our last. Okay, I'm sorry. We'll take a very short break.
judges: Diana Gribbon Motz, G. Steven Agee, Pamela A. Harris